# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term 2025

(Argued: November 19, 2025        Decided: July 28, 2026)

No. 25-103
_____

IN RE: LAURA CHARLENE GOEBEL,

*Debtor.*
_____

LAURA CHARLENE GOEBEL, DEBTOR,

*Plaintiff-Appellee,*

-v.-

UNITED STATES OF AMERICA DEPARTMENT OF THE TREASURY INTERNAL REVENUE
SERVICE,

*Defendant-Appellant.*

_____

Before:     KEARSE, RAGGI, AND LIVINGSTON, *Circuit Judges.*

Defendant-Appellant the Internal Revenue Service ("the IRS") appeals from an order of the United States Bankruptcy Court for the Eastern District of New York (Lord, *J.*) denying the IRS's motion to dismiss Plaintiff-Appellee Laura Charlene Goebel's ("Goebel") complaint.  Having filed for bankruptcy, Goebel

1

sought a declaration from the bankruptcy court that 11 U.S.C. § 523(a)(1) did not afford her debts an exception from discharge. After pleading nondischargeability in its own complaint to reduce Goebel's debts to judgment with the United States District Court for the Eastern District of New York (Irizarry, *J.*), the IRS sought to dismiss Goebel's complaint for lack of subject matter jurisdiction. The bankruptcy court declined to do so, concluding that Goebel could cure any jurisdictional deficiency by filing a supplemental complaint with additional facts regarding the IRS's efforts to collect on debts afforded an exception from discharge. On appeal, the IRS argues (1) that Goebel's complaint did not present a justiciable dispute, (2) that a supplemental complaint cannot cure a jurisdictional defect in a complaint, and (3) that 28 U.S.C. § 2201(a), the federal tax exception to the Declaratory Judgment Act, precludes the relief Goebel seeks. We agree with the IRS that the bankruptcy court should have dismissed Goebel's complaint. The complaint lacks plausible allegations of an injury in fact because, under these circumstances, a debtor enjoys the self-executing "presumption" that a general discharge covers the tax debts, a presumption overcome only by the IRS's affirmative showing that "the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). And even assuming *arguendo* that a supplemental complaint can remedy jurisdictional defects of constitutional dimension, the bankruptcy court still erred in denying the IRS's motion because the IRS's complaint was the first-filed complaint over which a court had jurisdiction. Accordingly, we **VACATE** the bankruptcy court's order and **REMAND** with instructions to dismiss Goebel's complaint and supplemental complaint.

FOR PLAINTIFF-APPELLEE: THOMAS MOERS MAYER, Herbert Smith Freehills Kramer (US) LLP, New York, NY.

Rachel Blumenfeld, Law Office of Rachel Blumenfeld, Brooklyn, NY.

(David W. Foster, Kirkland & Ellis LLP, Washington, DC, Chad J. Husnick, Anthony V. Sexton, Kirkland & Ellis LLP, Chicago, IL, Leah Davis Patrick, Kirkland & Ellis LLP, Houston, TX, *for* National Consumer

|  | Bankruptcy Rights Center and The National Association of Consumer Bankruptcy Attorneys as *amici curiae*.) |
|---|---|
| FOR DEFENDANT-APPELLANT: | PETER SKLAREW (John J. Durham, Joseph Nocella, Jr., United States Attorneys, Matthew S. Johnshoy, Ellen Page DelSole, Bruce R. Ellisen, Attorneys, *on the brief*), United States Department of Justice, Tax Division, Washington, DC. |

DEBRA ANN LIVINGSTON, *Circuit Judge*:

In 2022, Plaintiff-Appellee Laura Charlene Goebel ("Goebel") filed a Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the Eastern District of New York. Shortly thereafter, she filed an adversary complaint against Defendant-Appellant the Internal Revenue Service ("the IRS") and requested the bankruptcy court to determine that a provision in the Bankruptcy Code, 11 U.S.C. § 523(a)(1), did not afford her income tax debts an exception from discharge. Goebel received a general discharge in December of 2022, but due to delays in service of process, her complaint remained pending before the bankruptcy court until April of 2023.

Meanwhile, on March 14, 2023, the IRS filed a complaint with the United States District Court for the Eastern District of New York. The IRS sought to

reduce Goebel's tax debts to judgment and asserted that the debts were excluded from the scope of the general discharge as debts "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The IRS also moved before the bankruptcy court to dismiss Goebel's pending complaint there for lack of subject matter jurisdiction, arguing both that it did not present a justiciable dispute and that it requested relief barred by the federal tax exception to the Declaratory Judgment Act, 28 U.S.C. § 2201(a).

The bankruptcy court declined to dismiss Goebel's complaint because it concluded that, following the IRS's assertion of nondischargeability in its own complaint, Goebel could remedy any jurisdictional defects in her initial complaint by filing a supplemental complaint. The IRS argues on appeal that the bankruptcy court erred in that determination. We agree. Goebel's complaint did not contain any facts suggesting that the IRS ever manifested a concrete intention to assert her debts were nondischargeable. Because Goebel relied instead on "fears of hypothetical future harm," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013), her complaint failed plausibly to allege an injury in fact and, consequently, to establish standing. And even assuming *arguendo* that a

4

supplemental complaint can remedy jurisdictional defects of constitutional dimension, dismissal was required because the IRS's complaint was the first-filed jurisdictionally proper complaint.[1]

Accordingly, we **VACATE** the bankruptcy court's order and **REMAND** for further proceedings with instructions to dismiss Goebel's complaint and supplemental complaint.

## BACKGROUND

Facing $623,331.31 in debt, Goebel filed a Chapter 7 bankruptcy petition on September 2, 2022 with the United States Bankruptcy Court for the Eastern District of New York (Lord, *J*.). In October, Goebel filed a complaint against the IRS, "seeking a determination of the Bankruptcy Court declaring the Debtor's income tax obligations for the calendar years 2008 through 2018 and all penalties and interest associated therewith, as dischargeable obligations pursuant to § 523(a)(1) of the Bankruptcy Code." App'x 19 Goebel Compl. ¶ 1. The income tax debts referenced in the complaint amounted to $512,545.17 of Goebel's total debt. Two

---

[1] Because we conclude the bankruptcy court should have dismissed Goebel's complaint for lack of subject matter jurisdiction, we need not reach the IRS's argument regarding the federal tax exception to the Declaratory Judgment Act.

months after Goebel filed her complaint, the bankruptcy court entered a general discharge order.[2]

On March 14, 2023, with Goebel's adversary complaint still pending, the IRS filed its own complaint against Goebel in the United States District Court for the Eastern District of New York (Irizarry, *J.*), seeking to "reduce to judgment unpaid federal tax liabilities owed by Laura C. Goebel for the 2010 through 2018 income tax periods (anticipating Laura C. Goebel's defense based on discharge in bankruptcy and asserting the exception to discharge under 11 U.S.C. § 523(a)(1)(C))." Suppl. App'x 127. The complaint asserts that "Laura C. Goebel willfully attempted to evade or defeat the liabilities in several ways[.]" Suppl. App'x 129–30 IRS Compl. ¶ 7.

On April 21, 2023, the IRS moved to dismiss Goebel's complaint for lack of subject matter jurisdiction. The IRS argued that 28 U.S.C. § 2201(a), the federal tax exception to the Declaratory Judgment Act, prohibited relief, and that, in any event, Goebel's complaint did not present a justiciable dispute.

---

[2] Goebel did not complete service of process on the IRS as to her adversary complaint until March 22, 2023, though the IRS notes in its briefing that "the Government received actual notice of the adversary complaint some time before it was served." Appellant's Br. 6–7.

Following a bench ruling, Judge Lord entered an order denying the motion to dismiss and directing supplemental pleading on March 18, 2024. The court explained that "[a]lthough it is true that ripeness is determined as of the date the complaint was filed . . . this court will not turn a blind eye to the reality of the situation and will not ignore the commencement of the District Court action so as to dismiss the adversary proceeding, even if it would be without prejudice." App'x 247. Judge Lord thus held that "the Plaintiff may supplement her complaint pursuant to Rule 15(d) to include allegations regarding the subsequent commencement of the District Court action" and cure the potential jurisdictional defect. App'x 249. The court further concluded that the Declaratory Judgment Act did not bar Goebel's requested relief. Goebel filed the supplemental complaint on March 28, 2024.

In April, the IRS filed a notice of appeal with the bankruptcy court and a motion for leave to appeal under 28 U.S.C. § 158(a)(3) with the district court. On August 8, 2024, the district court concluded that "it must deny the Government's motion for leave to appeal to this Court and certify this appeal directly to the Second Circuit Court of Appeals as it 'involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme

7

Court of the United States.'" App'x 221 (quoting 28 U.S.C. § 158(d)(2)(A)–(B)). In light of its decision to certify the appeal, the district court stayed the adversary proceedings before the bankruptcy court. This Court authorized the appeal on January 15, 2025.

## DISCUSSION

On appeal, the IRS argues that the bankruptcy court erred in declining to dismiss Goebel's complaint. We agree. The complaint did not plausibly allege an injury in fact because it provided no facts indicating that the IRS intended to collect on Goebel's debts post-discharge. A debtor's concern that the IRS might someday assert that various debts were excluded from discharge does not suffice, on its own, to create an Article III case or controversy. And independent of whether a supplemental complaint can cure a jurisdictional defect of constitutional dimension, the bankruptcy court should have deferred to the district court as the first court to obtain jurisdiction over the case.

### I

"Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."[3] *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "For there to be

---

[3] To be sure, bankruptcy courts are not Article III courts. *See Stern v. Marshall*, 564 U.S. 462, 502–03 (2011). But, at least with respect to adversary proceedings, we agree

8

a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *Id.* (citation modified) (quoting *Raines v. Byrd*, 521 U.S. 811, 819 (1997)). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.*; *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

The "actual or imminent" aspect of the injury-in-fact requirement, while "concededly a somewhat elastic concept," serves "to ensure that the alleged injury is not too speculative for Article III purposes." *Clapper*, 568 U.S. at 409 (quoting *Lujan*, 504 U.S. at 565 n.2); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III.").

---

with the circuits that have concluded "Article III's standing requirements apply to proceedings in bankruptcy courts just as they do to proceedings in district courts." *In re Res. Tech. Corp.*, 624 F.3d 376, 382 (7th Cir. 2010); *see also In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011); *In re Farmland Indus., Inc.*, 639 F.3d 402, 405 (8th Cir. 2011); *In re Thorpe Insulation Co.*, 677 F.3d 869, 884 (9th Cir. 2012). Though we recognize the Fourth and Fifth Circuits have viewed the issue differently, *see Kiviti v. Bhatt*, 80 F.4th 520, 532–33 (4th Cir. 2023); *In re Highland Cap. Mgmt., L.P.*, 74 F.4th 361, 366–67 (5th Cir. 2023), those decisions fail to "recognize the derivative nature of bankruptcy court jurisdiction," *In re Pettine*, 655 B.R. 196, 211 (B.A.P. 10th Cir. 2023), under 28 U.S.C. § 157 and § 1334.

Nonetheless, "[a]n allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.'"[4] *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation modified and alterations accepted) (quoting *Clapper*, 568 U.S. at 414 & n.5).

"[W]e review jurisdictional questions of law *de novo*." *In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013). To survive a motion to dismiss for lack of standing, a plaintiff "must allege facts that affirmatively and plausibly suggest that it has standing to sue." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). In this context, "[a]ll allegations made in the complaint are accepted as true and construed in favor of the plaintiff[]." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 184 (2d Cir. 2020).

---

[4] "Constitutional ripeness is a doctrine that, like standing, is a limitation on the power of the judiciary." *Simmonds v. I.N.S.*, 326 F.3d 351, 357 (2d Cir. 2003). A case is not constitutionally ripe where it is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "Crucially, the doctrine of constitutional ripeness 'overlaps with the standing doctrine, most notably in the shared requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.'" *Lacewell v. Off. of Comptroller of Currency*, 999 F.3d 130, 149 (2d Cir. 2021) (quoting *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013)). Accordingly, where, as here, the constitutional ripeness of a case turns on "that shared requirement," we need "not address ripeness separately" and will "consider it together with, and as part of, the standing inquiry." *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 225–26 (2d Cir. 2006), *abrogated on other grounds by Bond v. United States*, 564 U.S. 211 (2011).

## A

Here, Goebel's initial complaint did not plausibly allege that she faced a substantial risk of harm. Once Goebel filed her bankruptcy petition, the automatic stay provided by the Bankruptcy Code precluded any collection efforts. *See* 11 U.S.C. § 362. Though the automatic stay would expire if and when Goebel received a discharge, *see* 11 U.S.C. § 362(c)(2)(C), a discharge order "releases a debtor from personal liability with respect to any discharged debt by voiding any past or future judgments on the debt and by operating as an injunction to prohibit creditors from attempting to collect or to recover the debt." *Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440, 447 (2004). In other words, following discharge, Goebel faced the prospect of personal liability on her debts only if a creditor could successfully argue the debts were nondischargeable. *See* 11 U.S.C. §§ 523, 524.

Whether Goebel faced a substantial risk of harm thus depended on the likelihood that an exception to dischargeability applied. As the IRS argues, though "Goebel's complaint broadly reference[d] 11 U.S.C. § 523(a)(1)," the only relevant provision was § 523(a)(1)(C) "because the other provisions of 11 U.S.C. § 523(a)(1) are largely based on time periods that are easily calculated," and that

11

precluded their applicability. Appellant's Br. 20–21; *see also* 4 COLLIER ON BANKRUPTCY ¶ 523.07 (Richard Levin & Henry J. Sommer eds., 16th ed. 2026) ["COLLIER ON BANKRUPTCY"]. But § 523(a)(1)(C) has no such time limitations, and excepts from discharge all tax debts "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax."

To collect on Goebel's debts pursuant to § 523(a)(1)(C), the IRS would have to establish both "a conduct element (an attempt to evade or defeat taxes) and a mens rea requirement (willfulness)," *In re Tudisco*, 183 F.3d 133, 136 (2d Cir. 1999), by a preponderance of the evidence, *see Grogan v. Garner*, 498 U.S. 279, 286–87 (1991). Goebel's complaint "set forth no specific facts," *Clapper*, 568 U.S. at 412, suggesting that the IRS believed Goebel met either element of § 523(a)(1)(C) or that the IRS otherwise manifested a concrete intention to assert that Goebel's debts were nondischargeable.[5] *See also IRS v. Wallace*, No. 23-CV-1331-JES, 2023 WL 7360835, at *5 (C.D. Ill. Nov. 7, 2023) (noting that "it would not be reasonable for

---

[5] Because we conclude Goebel did not plausibly allege a substantial risk of harm in her initial complaint, we need not address the IRS's argument that the entry of a general discharge was an additional "prerequisite[]," Appellant's Br. 17, to the justiciability of Goebel's complaint.

Mr. Wallace, assuming that he was an honest debtor, to worry over the dischargeability of his debts under § 523(a)(1)(C)"). Indeed, Goebel's complaint does not specifically reference § 523(a)(1)(C) at all. *See* App'x 18–36.

Absent facts demonstrating such a substantial risk, Goebel's "fear" that the IRS *might* someday seek to assert that § 523(a)(1)(C) applied was "necessarily conjectural" and did not establish an injury in fact.[6] *Clapper*, 568 U.S. at 412. "It is the reality of the threat of . . . injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) (emphasis omitted); *see also Clapper*, 568 U.S. at 416 ("In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."); *Wallace*, 2023 WL 7360835, at * 5 ("And, even if Mr. Wallace is simultaneous[ly] of strong moral fiber and yet impractically concerned, worried, upset, or stressed about his tax debt, such injuries, while important, are insufficiently concrete to support his standing to bring a claim.").

---

[6] To be sure, subsequent events make the IRS's intent to assert nondischargeability seem obvious. But our inquiry turns on the facts pled in Goebel's complaint, not on hindsight.

**B**

Because Goebel did not plausibly allege an injury in fact in her complaint, the bankruptcy court lacked jurisdiction. Goebel makes an array of arguments to the contrary, but none persuades.

**1**

Goebel first argues that "the plain language of the Bankruptcy Code and the Bankruptcy Rules authorized [her] to bring her complaint when she did (in October 2022) and where she did (in bankruptcy court)." Appellee's Br. 10. But even assuming *arguendo* that Goebel is correct in her interpretation of the various statutory provisions and rules, this Court has a "responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion*, 594 U.S. at 426. Accordingly, the Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)); *see also Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020) ("But the cause of action does not affect the Article III standing analysis.").

Goebel's efforts to analogize § 523(a)(1)(C) to other statutory provisions in which, consistent with Article III, bankruptcy courts make various determinations

regarding debts fall flat. Each of the statutory contexts Goebel references differs meaningfully from the one here. Section 523(c) provides that for certain types of nondischargeable debts, a creditor must affirmatively raise nondischargeability with the bankruptcy court prior to entry of a general discharge. *See also* Bankruptcy Rule 4007(c). But a creditor who raises such an objection *does*, unlike Goebel, allege a plausible injury in fact because, absent their objection, the creditor is certain to suffer pocketbook injury. *See Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017) ("For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). In a no-asset bankruptcy, a creditor with a covered debt who does not file a complaint within the allotted time forfeits the right to recover the balance of the debt following the entry of a general discharge.

Another provision, § 505, provides that a bankruptcy court "may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction." 11 U.S.C. § 505(a)(1). And 11 U.S.C. § 507(a)(8) grants priority to certain tax debts, with § 523(a)(1)(A) making such priority claims nondischargeable. In adjudicating issues related to these

15

provisions, bankruptcy courts make determinations necessary to resolve bankruptcy cases. In contrast, the court can distribute a Chapter 7 debtor's assets to creditors and subsequently grant a general discharge without determining whether § 523(a)(1) applies to any debts. *See Hinton v. United States*, No. 09-CV-6920, 2011 WL 1838724, at *4 (N.D. Ill. May 12, 2011) ("Bankruptcy courts have adjudicated dischargeability complaints in pending chapter 13 cases, but with one exception these cases included a finding that determination of dischargeability could affect the distribution of payments under the plan, a factor not present in a chapter 7 situation."). Whether the exception applies affects the debtor's personal liability in the future, not the distribution of the estate.

In other words, incidental to resolving justiciable cases, courts may decide various issues relating to tax debts in advance. But courts' ability to make such determinations as part of deciding otherwise justiciable cases does not relieve plaintiffs of their burden plausibly to allege the existence of an injury in fact.

Lastly, in a Chapter 13 case, the Ninth Circuit adjudicated and found constitutionally ripe a plaintiff's request for "a determination that it would constitute an undue hardship under 11 U.S.C. § 523(a)(8) for her to repay her student loans, and that her student loans should therefore not be excepted from

discharge." *In re Coleman*, 560 F.3d 1000, 1003 (9th Cir. 2009). But, unlike this case, *Coleman* involved a plausible injury in fact. As that court observed, "the hardship to Coleman [was] committing to a Chapter 13 plan for three to five years without any guarantee that her student loans [would] be discharged at the end of this time period." *Id.* at 1010; *see also id.* ("Because debtors must commit *all* of their disposable income to payments under a Chapter 13 plan, 11 U.S.C. § 1325(b)(1)[–](2), five years repayment is a considerable burden to bear without any guarantee that the debt will be ultimately discharged." (emphasis in original)).[7]

### 2

Goebel next argues that the case is justiciable because "[b]ankruptcy is and always [has] been an 'in rem' proceeding." Appellee's Br. 16 (italics omitted) (quoting *Hood*, 541 U.S. at 447). To be sure, "[t]he discharge of a debt by a bankruptcy court is . . . an in rem proceeding." *Hood*, 541 U.S. at 447 (italics

---

[7] We note that the Fifth and Eighth Circuits have viewed the issue differently than the Ninth Circuit. *See In re Rubarts*, 896 F.2d 107, 109 (5th Cir. 1990); *In re Bender*, 368 F.3d 846, 848 (8th Cir. 2004). We need not here take a position as to whether the Ninth Circuit's or the Fifth and Eighth Circuits' approach is more correct. We observe only that the Ninth Circuit's approach appears to comport with the allowance of such a debtor-brought dischargeability claim as seen in the facts of *Hood*. *See* 541 U.S. at 443–45; *see also infra* at 18 (discussing *Hood*'s holding regarding in rem jurisdiction).

omitted).   But Goebel misunderstands the significance of the in rem nature of a bankruptcy proceeding as it pertains to Article III jurisdiction.

Although in rem jurisdiction "is premised on the res," *Hood*, 541 U.S. at 448, and has implications for whether a case implicates sovereign immunity, *see id.*, where a court exercises in rem jurisdiction, a plaintiff must still have Article III standing.   *See, e.g., United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999) ("In determining standing to challenge a forfeiture, we look to ownership and possession because they are often reliable indicators of injury that occurs when property is seized."); *United States v. Batato*, 833 F.3d 413, 435 (4th Cir. 2016) ("As the district court found after a thorough analysis of New Zealand property law, Mrs. Dotcom has failed to articulate such an injury because she has not asserted a nonhypothetical legal interest in the property.").   While the standing inquiry for in rem proceedings may vary slightly from the inquiry for in personam proceedings, we need not delineate precise boundaries today.   It suffices to state that the in rem nature of bankruptcy proceedings did not relieve Goebel of her "burden of alleging facts that affirmatively and plausibly suggest[ed] that [she] ha[d] standing to sue" in an adversary proceeding.   *Calcano v. Swarovski N. Am.*

18

*Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015)).

**3**

Finally, Goebel contends she has standing because the tax debts represent contingent liabilities. Appellee's Br. 16 ("If the old tax debts are discharged, Ms. Goebel owes the IRS nothing, if the old tax debts are not discharged, Ms. Goebel owes the IRS more than $500,000. The old tax debts are therefore a contingent liability."). To be sure, "a liability, including a contingent liability, may be a cognizable legal injury." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

We have never suggested, however, that a contingent liability *always* qualifies as an injury in fact. As in any case involving an allegation of future injury, the question remains whether the contingent liability "creates an imminent threat of injury." *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1086 (9th Cir. 2022); *see also Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1299 (10th Cir. 2008) (noting that because "a contingent liability, by definition, may not arise for a considerable time, if ever," the question remains whether the "consequences of a contingent liability" are "actual or imminent"); *cf.* 10B WRIGHT

19

& MILLER'S FEDERAL PRACTICE & PROCEDURE, CIVIL § 2757 (4th ed. 2008) ("In other instances the contingency is so remote and unlikely that declaratory relief cannot be had."); *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged [in each case seeking declaratory judgment] . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). And, for the reasons discussed above, Goebel failed to identify any actual or imminent consequences in her complaint.

In arguing otherwise, Goebel relies on the Supreme Court's decision in *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937). That reliance is misplaced. In *Aetna*, the Court concluded a controversy existed where "the parties had taken adverse positions with respect to their existing obligations." *Id*. The insured argued that "he had become totally and permanently disabled and hence was relieved of the obligation to continue the payment of premiums and was entitled to the stipulated disability benefits and to the continuance of the policies in force." *Id.* And "the company made an equally definite claim that the alleged basic fact did not exist, that the insured was not totally and permanently disabled and had

not been relieved of the duty to continue the payment of premiums, that in consequence the policies had lapsed, and that the company was thus freed from its obligation either to pay disability benefits or to continue the insurance in force." *Id.* Unlike the plaintiff in *Aetna*, unless and until the IRS asserted that § 523(a)(1)(C) applied, Goebel suffered no cognizable immediate consequences.

Goebel's citation to *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007), fares no better. There, MedImmune sought a declaratory judgment where Genetech had "delivered [MedImmune] a letter expressing its belief that [a new drug] was covered by [a] patent and its expectation that [MedImmune] would pay royalties beginning March 1, 2002." *Id.* at 121. MedImmune "considered the letter to be a clear threat to enforce the . . . patent, terminate the 1997 license agreement, and sue for patent infringement if [MedImmune] did not make royalty payments as demanded." *Id.* at 122. Unlike this case, *MedImmune* thus involved a "plaintiff's self-avoidance of imminent injury." *Id.* at 130. Because Goebel failed plausibly to allege the existence of such an imminent injury, her complaint did not present a justiciable dispute.

## II

Though we hold the bankruptcy court lacked jurisdiction over Goebel's complaint, the question remains whether, as the bankruptcy court believed, following the IRS's filing, Goebel could cure any jurisdictional deficiencies in her initial complaint by filing a supplemental complaint under Bankruptcy Rule 7015 and Fed. R. Civ. Proc. Rule 15(d).[8]   "Although we have discussed the question in dicta, we have never squarely addressed whether events occurring after the filing of a complaint may cure a jurisdictional defect that existed at the time of initial filing. That question has divided our sister circuits."   *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020) (citation omitted); *see also id.* at 354 n.7 (collecting cases).   As in *Saleh*, "[w]e need not answer it here," *id.* at 355, because even assuming *arguendo* that a supplemental complaint could cure a jurisdictional

---

[8] Rule 15(d), made applicable to bankruptcy proceedings by Bankruptcy Rule 7015, provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

defect relating to a constitutional requirement, the bankruptcy court abused its discretion in failing to dismiss Goebel's suit as duplicative of a preexisting, jurisdictionally proper suit.

"We have recognized 'the basic proposition that the first court to obtain jurisdiction of the parties and of the issues should have priority over a second court to do so.'" *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 722 (2d Cir. 2010) (quoting *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961)). That "rule embodies considerations of judicial administration and conservation of resources." *First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989). Though often referred to as the "first to file rule," *id.* at 77, the rule stems from the principle that "a party who first brings an issue into a court of *competent jurisdiction* should be free from the vexation of concurrent litigation over the same subject matter," *Fowler*, 287 F.2d at 46 (emphasis added).

In short, priority generally lies with the first jurisdictionally proper suit.[9] "While the decision whether or not to stay or dismiss a proceeding rests within a

---

[9] As a technical matter, this case involves a related but distinct rule. *See Marciniak v. Massachusetts Inst. of Tech.*, No. 23 CIV. 10305 (JPC), 2024 WL 4350872, at *7-8 (S.D.N.Y. Sept. 29, 2024) (noting that the first-to-file rule "applies when two competing lawsuits are filed in *different* federal judicial districts," whereas the rule against duplicative litigation applies "when two competing lawsuits are filed within the *same* judicial district" (emphasis in original)). Because, as we explain below, the bankruptcy court's

district judge's discretion, normally '[s]ound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated,' and 'a district court can go beyond the allowable bounds of discretion when it refuses to stay or dismiss a duplicative suit[.]'" *AEP*, 626 F.3d at 723 (citation modified) (first quoting *Fowler*, 287 F.2d at 45; then quoting *Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991)).

Here, the IRS suit was the first jurisdictionally proper suit. As discussed above, Goebel's initial complaint failed plausibly to allege the existence of an injury in fact. So, even if Goebel could cure the deficiencies in the original complaint by filing a supplemental complaint, the bankruptcy court would only obtain jurisdiction over the case at that time and would still be obligated to defer to the district court. *Cf. Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35–36 (2025) ("The reconfiguration accomplished by an amendment may bring the suit either newly within or newly outside a federal court's jurisdiction."); 6A WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE, CIVIL § 1508 (4th ed. 2008) ("[T]he relation back of a supplemental pleading should not result in providing unfair

---

jurisdiction is derivative of the district court's jurisdiction, the rule against duplicative litigation governs. In any case, whichever rule applies, deference to the first jurisdictionally proper suit remains appropriate.

procedural advantages to a plaintiff so that relation back may not be for all purposes. For example, if the court initially issues a preliminary injunction in an action in which there is no case or controversy present when the suit is filed, later events which establish that the claim now has matured should not be allowed to relate back to support the propriety of the issuance of the preliminary injunction."); *Coastal Corp. v. Texas E. Corp.*, 869 F.2d 817, 821 n.3 (5th Cir. 1989) ("Coastal's amended complaint filed on January 31 conferred jurisdiction on the district court at least from thence forward because it alleged that Texas Eastern had issued press releases that violated the Williams Act in the manner of their opposition to the tender offer."). Accordingly, the bankruptcy court should have dismissed Goebel's complaint for lack of subject matter jurisdiction rather than authorize the filing of a supplemental complaint.

Goebel argues, however, that "the law provides superior jurisdiction to the bankruptcy court on discharge issues brought in other courts." Appellee's Br. 23. Accordingly, she contends that "there cannot be a first-to-file rule in dischargeability litigation—especially where, as here, the bankruptcy case is not closed." *Id.* But Goebel misinterprets both 28 U.S.C. § 1452 and 11 U.S.C. § 524(a)(2), the statutory provisions on which she relies.

First, § 1452 allows for the removal of certain claims related to bankruptcy cases "to the *district court* for the district where such civil action is pending." 28 U.S.C. § 1452(a) (emphasis added). And 28 U.S.C. § 1334(a) and (b) provide that "the *district courts* shall have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(a)–(b) (emphasis added). Accordingly, "it is illogical to interpret the bankruptcy removal statute to authorize removal *from* a district court *to* the district court in the same district." *In re Curtis*, 571 B.R. 441, 445 (B.A.P. 9th Cir. 2017); *see also United States v. Mikhov*, 645 B.R. 609, 615 (S.D. Ind. 2022) (noting that "[t]he plain language of 28 U.S.C. § 1452 does not authorize removal to a bankruptcy court").

To be sure, 28 U.S.C. § 157 states that "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157. But as a Bankruptcy Appellate Panel has explained:

> The predicate for the referral power is the bedrock principle that the district courts have jurisdiction over bankruptcy cases and proceedings; the bankruptcy court's jurisdiction over such matters is purely and solely derivative of the district court's jurisdiction. And

26

> the bankruptcy court's power to hear, or to hear and determine, as the case may be, bankruptcy cases and proceedings is entirely dependent upon the referral by the district court.

*Curtis*, 571 B.R. at 447. So, there is nothing anomalous about the bankruptcy court deferring to the district court that first obtained jurisdiction over the case because the bankruptcy court depends on that district court for its jurisdiction in the first place.

Second, § 524(a) provides, among other things, that a discharge "voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged" and "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(1)-(2). But "the discharge applies only to debts that are discharged." 4 COLLIER ON BANKRUPTCY ¶ 524.02. So "a proceeding seeking a determination that a debt was not discharged would not violate the injunction." *Id*. Likewise, a judgment would be void under § 524 only if it applied to a discharged debt. *See* 11 U.S.C. § 524. In other words, § 524 does not grant the bankruptcy court superior jurisdiction over litigation regarding nondischargeable

debts. Accordingly, the bankruptcy court should have granted the IRS's motion to dismiss Goebel's complaint in deference to the district court's jurisdiction.

## CONCLUSION

In sum, we conclude that Goebel's complaint did not plausibly allege an injury in fact. And regardless of whether a supplemental complaint could remedy that jurisdictional defect, the bankruptcy court should have deferred to the district court as the first court to obtain jurisdiction over the case. We therefore hold that the bankruptcy court erred in denying the IRS's motion to dismiss. Accordingly, we **VACATE** the bankruptcy court's order and **REMAND** with instructions to dismiss Goebel's complaint and supplemental complaint.